UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| In re: | FOR PUBLICATION |
|---|---|
| INVERSORA ELÉCTRICA de BUENOS AIRES S.A., | Case No. 16-12854 (MG) |
| Debtor in a Foreign Proceeding. | |

**MEMORANDUM OPINION RECOGNIZING FOREIGN MAIN PROCEEDING AND GRANTING RELIEF**

*A P P E A R A N C E S:*

SHEARMAN & STERLING LLP
*Attorneys for the Foreign Representative*
599 Lexington Avenue
New York, NY 10022
By:   Frederic Sosnick, Esq.
      Sara Coelho, Esq.

CARTER LEDYARD & MILBURN LLP
*Attorneys for Bank of New York Mellon Corporation*
2 Wall Street
New York, NY 10005
By:   James Gadsden, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court are the *Chapter 15 Petition for Recognition of a Foreign Proceeding* (the "Petition," ECF Doc. # 1) and the *Foreign Representative's Motion for Order Granting Final Relief in Aid of a Foreign Proceeding* (the "Motion," ECF Doc. # 5), filed by Jaime Javier Barba in his capacity as the authorized foreign representative (the "Foreign Representative") for Inversora Eléctrica de Buenos Aires S.A. ("IEBA" or the "Debtor"). The Foreign Representative seeks an order (i) granting the Petition and recognizing the restructuring proceeding pursuant to an acuerdo preventivo extrajudicial ("APE") under the provisions of Title

II, Chapter VII of the Argentine Bankruptcy Law No. 24,522 (as amended) (the "Argentine Bankruptcy Law") before the National Commercial No. 1 Court sitting in the City of Buenos Aires, Argentina (the "Argentine Court" and, such proceeding, the "Foreign Proceeding") as a foreign main proceeding under section 1517 of the Bankruptcy Code; (ii) recognizing and enforcing the Argentine Court's order approving the APE (the "Homologation Order"); (iii) permanently enjoining all parties from commencing or taking any action in the United States to obtain possession of, exercise control over, or assert claims against the Debtor or its property; and (iv) granting such other relief as may be just and proper. In support of the Motion, the Foreign Representative filed the Declaration of Jaime Javier Barba (the "Barba Declaration," ECF Doc. #2).

The Petition and the Motion are unopposed. For the reasons explained below, the proceeding in Argentina is recognized as a foreign main proceeding and the Motion for final relief is granted.

## I.    BACKGROUND

### A.    The Debtor's Business

IEBA is the Argentine holding company of Empresa Distribuidora de Energia Atlántica S.A. ("EDEA"), which operates the distribution of electricity in the eastern region of the Province of Buenos Aires. (Barba Decl. ¶ 11.) IEBA was formed to acquire EDEA when EDEA was privatized by the Province of Buenos Aires. (*Id.*) In 1997, EDEA was granted an exclusive 95-year "concession" under which EDEA would provide electricity to 17 districts in the Province of Buenos Aires (the "Concession"). (*Id.* ¶ 12.) Under the Concession (and applicable Argentine law), EDEA receives revenue through tariffs charged for electricity distribution. (*Id.*) EDEA services approximately 513,000 customers, of which 90% are residential. (*Id.*)

2

B.     **The First Reorganization and the Old Notes**

Following an economic crisis in Argentina in 2002 and poor management and governance, IEBA experienced a dramatic drop in revenues. IEBA defaulted in payment of its then-outstanding notes, and commenced a reorganization proceeding (the "First Reorganization"). (*Id.* ¶ 22.) IEBA's Series C Notes and Series D Notes (together, the "Old Notes") were issued in 2007 in connection with the First Reorganization restructuring plan. (*Id.*) The payment obligations under the Old Notes were not secured by any of the Debtor's assets, but "had the benefit of" two pledges of shares totaling 11% of IEBA's capital stock and voting rights. (*Id.* ¶ 28.) Additionally, Camuzzi Argentina S.A. jointly and severally guaranteed the payment of interest under the Old Notes through a commercial guarantee. (*Id.*)

C.     **The Current Reorganization**

IEBA has recently experienced financial hardship as a result of difficulties in securing the appropriate tariff rates. (*Id.* ¶ 21.) IEBA represents that regulators have not permitted the tariffs that are charged for electricity to increase at levels necessary to sustain its business. (*Id.*) Because of the "prolonged" time period in which EDEA has been unable to set appropriate tariffs, EDEA has been unable to pay dividends to IEBA; in turn, IEBA has been unable to make coupon payments on the Old Notes from and including its payment date on December 26, 2014. (*Id.* ¶ 26.) As a result, IEBA sought to restructure the Old Notes. (*Id.*)

On November 9, 2015, pursuant to a Solicitation Memorandum (Barba Decl. Ex. A), IEBA began soliciting the tender of the Old Notes in order to execute an exchange offer in connection with the APE. (*Id.* ¶ 29.) The APE is supported by over 91% of the holders of the Old Notes. (*Id.* ¶ 33.)

On December 23, 2015, IEBA commenced a restructuring of its obligations pursuant to the APE under the provisions of Title II, Chapter VII of the Argentine Bankruptcy Law No. 24,522 before the Argentine Court.  (*Id.* ¶ 32.)  On September 8, 2016, the Argentine Court entered the Homologation Order approving the APE.  (*Id.*)  On September 26, 2016, IEBA consummated the transactions approved in the APE with respect to the consenting noteholders by making certain cash payments and issuing and delivering new notes (the "New Notes").

Holders of Old Notes who did not participate in the solicitation were to receive a combination of cash and exchange notes.  (*Id.* ¶ 32.)  Under the terms of the APE, the closing of the transactions described above had to occur within 30 days of the Homologation Order.  (*Id.* ¶ 34.)  On September 27, 2016, IEBA informed the Argentine Court that it would seek relief under Chapter 15 with this Court, and the 30-day period for closing the transactions with non-consenting creditors was tolled pending that request.  (*Id.*)  On October 12, 2016, IEBA filed its Chapter 15 Petition and the Motion with this Court.  (ECF Docs. ## 1, 5.)

        **D.**      **The Debtor's United States Assets**

IEBA's assets in the United States primarily consist of property held in accounts located in New York.  These accounts include (i) an escrow account in New York at Bank of New York Mellon Corporation ("BNY Mellon") containing unclaimed Old Notes; and (ii) cash in a bank account at a New York branch of Barclays Bank PLC.  (Mot. at 5–6.)  Additionally, the indenture governing the Old Notes (the "Old Notes Indenture") is governed by New York law and includes a New York forum selection clause.  (*Id.* at 6.)  BNY Mellon will not exchange the Old Notes it holds in escrow for cash and exchange notes without an order from a U.S. court, making this chapter 15 proceeding necessary to carry out the terms of the APE.

## II.    LEGAL STANDARD

### A.    Recognition of Foreign Proceeding

Bankruptcy Code section 1517(a) provides that the court shall, after notice and a hearing, enter an order recognizing a foreign main proceeding if:

> (1) such foreign proceeding for which recognition is sought is a foreign main proceeding . . . within the meaning of section 1502;
> (2) the foreign representative applying for recognition is a person or body; and
> (3) the petition meets the requirements of section 1515.

11 U.S.C. § 1517(a).

"While not explicit in this section [1517(a)], the foreign proceeding and the foreign representative must meet the definitional requirements set out in sections 101(23) and 101(24)." 8 COLLIER ON BANKRUPTCY ¶ 1517.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014). A foreign proceeding is a "collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. § 101(23); *see also In re ABC Learning Ctrs. Ltd.*, 445 B.R. 318, 327 (Bankr. D. Del. 2010). A foreign representative is "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24).

A foreign main proceeding "shall be recognized . . . if it is pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1517(b)(1). The Bankruptcy Code provides that "[i]n the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c); *see also In re*

5

*Bear Stearns*, 374 B.R. 122, 130 (Bankr. S.D.N.Y. 2007). Case law in other countries "establishes that the presumption in favor of place of registration can be rebutted by showing that the 'head office' functions were carried out in a jurisdiction other than where the registered office was located." 8 COLLIER ON BANKRUPTCY ¶ 1516.03; *see also Bear Stearns*, 374 B.R. at 130. To determine a debtor's center of main interests, courts in this circuit also look to a nonexclusive list of factors, including "the location of the debtor's headquarters; the location of those who actually manage the debtor . . . ; the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes." *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 137 (2d Cir. 2013) (quoting *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006)).

The Bankruptcy Code further provides that an order of recognition shall be entered if the foreign representative applying for recognition is a person or body, and that the petition meets the requirements of section 1515. 11 U.S.C. § 1517(a)(2)–(3). The requirements of section 1515 include presentation of (i) a certified copy of the decision commencing the foreign proceeding and appointing the foreign representative; (ii) a certificate from the foreign court affirming the existence of the proceeding and appointment of the representative; or (iii) in the absence of (i) or (ii), evidence which the court deems sufficient to confirm the existence of the foreign proceeding and appointment of the foreign representative. 11 U.S.C. § 1515(b). The petition must also be accompanied by a statement identifying all known foreign proceedings with respect to the debtor, 11 U.S.C. § 1515(c), and if applicable, a translation of the evidentiary materials into English. 11 U.S.C. § 1515(d).

In *Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238 (2d Cir. 2013), the Second Circuit held that section 109(a) of the Bankruptcy Code applies to chapter 15 cases and requires that a foreign debtor must reside, have a domicile or place of business, or have property in the United States to be eligible to file a chapter 15 petition. *Id.* at 247. Where a foreign debtor does not have a domicile or place of business in the United States, the focus shifts to whether the debtor has sufficient property present in the United States to form the basis for jurisdiction. This Court has found that an undrawn attorney retainer held in a United States bank account provides a sufficient basis for jurisdiction. *In re Berau Capital Res. Pte Ltd*, 540 B.R. 80, 82 (Bankr. S.D.N.Y. 2015) (citing *In re Octaviar Admin. Pty Ltd,* 511 B.R. 361, 369–74 (Bankr. S.D.N.Y. 2014)). Further, dollar-denominated debt subject to New York governing law and a New York forum selection clause is independently sufficient to form the basis for jurisdiction. *Id.* at 83.

      B.      **Additional Relief Available Upon Recognition**

Upon an order recognizing a proceeding as a foreign main proceeding, section 1520 of the Bankruptcy Code makes the automatic stay under sections 361 and 362 applicable with regard to a stay of actions against property of the debtor within the jurisdiction of the United States. The statute refers to "property of the debtor" to distinguish it from the "property of the estate" that is created under section 541(a). In a chapter 15 case, there is no "estate"; nevertheless, section 1520(a) imposes an automatic stay on the debtor's property located in the United States. *In re Pro-Fit Holdings Ltd.*, 391 B.R. 850, 864 n.48 (Bankr. C.D. Cal. 2008).

Section 1520(a) also applies sections 363, 549 and 552 of the Bankruptcy Code to any transfer of a debtor's interest in property within this same jurisdiction; it allows a foreign representative to operate a debtor's business by exercising the rights and powers of a trustee

7

under sections 363 and 552; and it applies section 552 to property of the debtor that is within the territorial jurisdiction of the United States. 11 U.S.C. § 1520(a).

Section 1521(a) outlines the discretionary relief a court may order upon recognition. The Bankruptcy Code confers exceedingly broad discretion, since a court may grant "any appropriate relief" that would further the purposes of chapter 15 and protect the debtor's assets and the interests of creditors. *See* Leif M. Clark, ANCILLARY AND OTHER CROSS-BORDER INSOLVENCY CASES UNDER CHAPTER 15 OF THE BANKRUPTCY CODE, § 7[2] (2008). "Section 1521(a)(7) authorizes the court to grant to the foreign representative the sort of relief that might be available to a trustee appointed in a full bankruptcy case," including the turnover of property belonging to the debtor. *Id*. Section 1521(a)(7) carves out, however, avoidance powers under sections 547 and 548, which are only available to the trustee in a full case under another chapter. 8 COLLIER ON BANKRUPTCY ¶ 1521.02.

### III.    ANALYSIS

#### A.    The Foreign Proceeding is Entitled to Recognition

The Debtor has established that it has sufficient assets in the United States to form the basis for jurisdiction here. The Debtor has (i) dollar deposits in a New York bank account, (ii) an attorney retainer also on deposit in New York, and (iii) New York law-governed debt containing a New York forum selection clause; whether considered alone or together, these provide a sufficient basis for jurisdiction and venue in New York. *See In re Berau*, 540 B.R. at 82–83; *In re Octaviar*, 511 B.R. at 369–74.

The Debtor has readily shown that this case may properly be maintained under chapter 15. An APE is a "court-supervised insolvency proceeding brought under the laws of Argentina that is designed to enable debtors that are unable to pay all or part of their debts as they become

8

due to restructure those obligations in a manner that is binding upon all creditors of the debtor." (Mot. at 7.) This type of proceeding clearly falls within section 101(23)'s definition. Likewise, Barba is a proper "foreign representative"—he is authorized to take actions required to give effect to the Foreign Proceeding, including commencing this chapter 15 proceeding, and is therefore "authorized in a foreign proceeding to administer the reorganization . . . of the debtor's assets or affairs or to act as a representative of such foreign proceeding" as defined in section 101(24). This case was properly commenced when it was filed by the Foreign Representative attaching proof of the foreign proceeding and an English translation.

It is clear that IEBA's center of main interests is in Argentina. "[S]ubstantially all of the Debtor's property, operations and customers are located in Argentina." (Mot. at 9.) A lengthy list of the Debtor's connections to Argentina notably includes: (i) the Debtor's registered office is in Argentina; (ii) EDEA, the Debtor's main asset, is in Argentina; (iii) EDEA's main assets are electrical infrastructure properties in Argentina; and (iv) corporate governance for the Debtor is directed from Argentina. (*Id.* at 10–11.)

The Foreign Representative states that the purposes of this case are to restrict IEBA's creditors from taking actions in the United States that would undermine the APE; to facilitate the implementation of the APE and the cancellation of the Old Notes Indenture; and to facilitate enforcement of the APE in the United States. (*Id.* at 8–9.) Recognition of this case is consistent with chapter 15's stated purpose to fairly and efficiently administer cross-border insolvencies and "protect[] the interests of all creditors, and other interested entities, including the debtor." 11 U.S.C. § 1501(a)(3).

### B.     Discretionary Relief is Warranted and the APE and Homologation Order Should be Enforced in the United States

The Foreign Representative has shown that exercising the Court's discretion to enforce the Homologation Order and APE is appropriate.  An APE is similar to a "prepackaged" proceeding under chapter 11 in the United States.  An APE allows a debtor to negotiate a restructuring plan, organize a vote on that plan, obtain approval from a majority of its creditors, and submit the plan to an Argentine court for endorsement. (Mot. at 12.)  Further, the Argentine Bankruptcy Law provides similar creditor protections and rules governing the distribution of debtors' estates as the Bankruptcy Code. (*Id.* at 12–13.)  As Judge Lifland concluded in 2006, "[t]he rules governing an APE are consistent with the Bankruptcy Code." *In re Bd. of Directors of Telecom Argentina S.A.*, No. 05-17811 (BRL), 2006 WL 686867, at *22 (Bankr. S.D.N.Y. Feb. 24, 2006).  An APE, like a chapter 11 prepackaged plan, provides for fair distribution to the creditors by requiring "approval of the holders of two-thirds of the unsecured indebtedness and more than half of the number of claims affected by the proceedings." *Id.* at *22.  The APE and Homologation Order will also ensure a fair distribution to the holders of the Old Notes.

The Foreign Representative argues and the Court agrees that enforcement of the APE and Homologation Order is consistent with (i) section 1525's provision that "the court shall cooperate to the maximum extent possible with a foreign court"; (ii) section 1527's provision that such cooperation may be implemented by "coordination of the administration and supervision of the debtor's assets and affairs"; and (iii) the general purpose of chapter 15 and United States public policy. (*Id*. at 19–23.)  Enforcing the Homologation Order and APE promotes comity with Argentine courts, the centralization of disputes involving the debtor, and the orderly and fair administration of the Debtor's assets.

10

The Foreign Representative also seeks (i) an injunction against asserting claims arising under the Old Notes or Old Notes Indenture and in violation of the Homologation Order against the Debtor and its property; and (ii) an order directing the Depository Trust Company ("DTC") and BNY Mellon as indenture trustee (the "Indenture Trustee" and, together with DTC, the "U.S. Intermediaries") to carry out the ministerial actions necessary to consummate the Homologation Order and to provide that, upon the completion of such duties, the Indenture Trustee for the Old Notes is relieved of any further obligation.  (Mot. at 17.)  The Court concludes that this requested relief is consistent with section 1521(a)—it "will give clear direction and authority under United State law to the U.S. Intermediaries to carry out the requirements of the IEBA APE" and will benefit the Debtor and its estate.  (*Id*. at 18.)

## IV.    CONCLUSION

For the reasons explained above, the Petition for Recognition and the Motion are **GRANTED**.  A separate Order granting relief will be entered.


Dated:   November 23, 2016
         New York, New York

                                                       *____Martin Glenn_____*
                                                         MARTIN GLENN
                                              United States Bankruptcy Judge